MARY C. LEONARD v. CHARLES BEAUDRY ET AL.

[See 68 Mich. 312.]

*Contract for furnishing saw-mill with logs—Breach—Measure of damages.*

1. The *law* of this case was settled in the former opinion, reported in 68 Mich. 312.

2. Testimony which enables a jury to fix the daily capacity of a saw-mill, or the number of days required to perform a sawing contract, and the daily expenses incurred in operating the mill while engaged in such performance, affords them sufficient *data* from which to ascertain the difference between the cost of performance and the contract price, without entering the field of conjecture or speculation.

Error to Muskegon. (Dickerman, J.) Argued January 30, 1890. Decided April 11, 1890.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion, and in 68 Mich. 312.

*Bunker & Carpenter,* for appellants, contended:

1. Profits have been rejected as a proper measure of damages on records much more clear and convincing than the one in this case; citing *McKinnon v. McEwan,* 48 Mich. 106; *Allis v. McLean,* Id. 428; *Petrie v. Lane.* 58 Id. 527, 67 Id. 454.

*Smith, Nims, Hoyt & Erwin,* for plaintiff.

CHAMPLIN, C. J. The law of this case was settled in 68 Mich. 312.

The testimony as to whether or not a contract was entered into between the parties, such as declared on in the declaration, was conflicting and directly antagonistic. This testimony was submitted to the jury under proper instructions, and they have found in favor of the plaint-

iff. Their action does not come before us for review, if there was any testimony to support their verdict. The record discloses that there was such testimony. We have examined the errors assigned upon the rulings of the court in the admission of testimony, and find such rulings are free from error.

The only error assigned which requires comment is that which is based upon the right to recover damages under the testimony in the case.

When the case was here before, we said:

"When a claim is made for damages arising from breach of contract, and evidence is offered to show loss of profits which might have been realized from a performance of the contract, the question to be determined is whether the damages claimed are too conjectural, speculative, or contingent to form a safe basis for estimating the damages;" and we there said that, in a case like this, "there is no reason why the difference between the cost of performance and compensation agreed upon should not be recovered as actual damages suffered by the aggrieved party."

Defendants' counsel claim that the testimony is insufficient to form any just basis for the jury to estimate the plaintiff's damages. The jury having found for the plaintiff, they must have found that a contract was entered into as claimed by the plaintiff. Briefly stated, it was an agreement that the defendants would furnish to the plaintiff, to be sawed upon a band-saw at her mill, 1,000,000 feet of pine saw-logs of large size, and to commence the delivery of such logs at the mill as soon as the plaintiff was ready to saw them, which was about the 10th or 15th of May, and all to be delivered in the last part of June or the first part of July; for which sawing the defendants agreed to pay the plaintiff $3 a thousand feet for merchantable and short lumber, and $2 a thousand feet for culls. The testimony showed that about 10 per cent. of such logs would run to culls. Had she

been furnished the logs so that she could have performed her contract, she would have been entitled to receive for sawing 100,000 feet of culls, at $2 per thousand, $200; and for sawing 900,000 feet of merchantable and short lumber at $3 per thousand, $2,700,—total, $2,900.

There was testimony as to the capacity of the mill for sawing lumber, varying from twenty to forty thousand feet per day, depending upon the size of the logs; but the most of the witnesses placed the capacity from twenty-five to thirty thousand feet. There was testimony tending so show that it would have taken from four to six weeks to saw the million feet contracted for. We have no way of ascertaining what number of days the jury agreed upon as the time it would have taken to do the sawing; but the testimony furnished them *data* from which they could fix the number of days with reasonable certainty. The testimony also tended to show that the daily expenses of operating the mill in performing the work contracted for was $65. We think there was testimony upon which the jury could safely and justly estimate the damage without entering the field of speculation and conjecture. When they fixed from the testimony the daily capacity of the mill, or the number of days required to perform the work, they could readily ascertain the difference between the cost of performance and the contract price therefor.

There is no error of law in the record, and the judgment must be affirmed.

MORSE and GRANT, JJ., concurred. LONG, J., did not sit.